MORO REALTY HOLDING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 37406, 44759, 50490. Promulgated April 13, 1932.

*John W. Townsend*, Esq., *Claude E. Koss*, Esq., and *James Craig Peacock*, Esq., for the petitioner.

*John D. Kiley*, Esq., for the respondent.

1138

OPINION.

VAN FOSSAN: The question before us is whether or not petitioner was the real owner of a certain property known as the Lorrington Apartments and entitled to the benefits of ownership, or whether petitioner was merely a dummy corporation holding bare record title, the real ownership and all rights to the benefits being in a certain syndicate.

The syndicate agreement provided that the trustees of the syndicate were empowered to buy in the specified property for the benefit of the syndicate and take title "in the name of the trustees or some corporation or Massachusetts trust to be formed by them *for the benefit of the members of the syndicate.*" The agreement further specified the contributions and share of the profits of each of the subscribers, but provided that the control of the corporation, if one were organized, should rest exclusively in Rose, Moses and Kalish. The property was bought in by Rose and Kimbark and by them transferred to the corporation. Rose and Kimbark, however, had no beneficial ownership in the property as individuals, but held the same in trust for the benefit of the members of the

syndicate. Consequently, the corporation acquired no beneficial interest by the transfer to it of the record title.

Thus it is clear that the corporation was, as characterized by one of the witnesses, a legal shell holding bare record title only, all beneficial interest in the property and right to the usufruct being in the syndicate members. The corporation was formed solely for the purpose of holding title, issued no stock or other evidences of beneficial interest, held no corporate meetings, had no paid-in cash capital, paid no dividends and exercised none of the usual rights or privileges of corporate ownership.

The entire transaction was financed by contributions of the syndicate members or by borrowings on their indorsement. On sale of the property the corporation acted only as a conduit for the transferring of the proceeds to the syndicate members.

The income from the sale of the property was income to those entitled to the beneficial interest, the real owners of the property, and distributable to them in accordance with the syndicate agreement as modified. Theirs is the tax liability. The petitioning corporation derived no income from such sale and has no tax liability on account thereof.

The question presented is not new. It was fully considered in *Stewart Forshay;* 20 B. T. A. 537, in which case we held that where real property situated in New York is conveyed to one person for the benefit of another, the legal and equitable title vests in the latter under the laws of the state. Consequently, it was held that no part of the rents or profits from the sale of such property is income to the person in whose name the property is held.

By reason of the ample evidence introduced by petitioner, we are not left in a situation such as confronted us in *112 West 59th Street Corporation,* 23 B. T. A. 767, where we said:

We may state at the outset that the petitioner has not presented us with any definite evidence as to how it obtained title to the property in question or as to the circumstances of the sale of the property in 1921. There is no evidence as to any trust or agency agreement between the petitioner and the Beaumont Investment Trust, and we see no merit in petitioner's contention that petitioner was agent of or trustee for the Beaumont Investment Trust. Petitioner's contention is that under the law of New York there was a resulting trust in favor of the Beaumont Investment Trust, based upon the hypothesis that the property was purchased with funds of the Beaumont Investment Trust, although title was taken in the name of the petitioner. The evidence before us does not sustain this position. So far as we are able to determine from the record the property was purchased by Louis D. Beaumont on behalf of the Beaumont Investment Trust, was later sold to petitioner in a formal manner, and all the capital stock of petitioner was issued to the Beaumont Investment Trust in part payment therefor. Apparently the petitioner continued to owe the Beaumont Investment Trust a part of the purchase price. These facts distinguish the instant proceeding from the numerous cases of the courts of New York, cited by petitioner.

The evidence before us is complete and amply sustains petitioner's contention.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

STERNHAGEN dissents.